The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Bost and the briefs on appeal. Oral argument before the Commission was waived. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives or amend the Opinion and Award. Accordingly, the Opinion and Award by Deputy Commissioner Bost is affirmed.
The stipulated medical records and the depositions of various doctors are made a part of the evidentiary record in this case.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and thereafter by agreement as:
STIPULATIONS
1. There was a previous Opinion and Award by Deputy Commissioner Charles Markham entered on September 10, 1992, indicating a change in medical condition of the Plaintiff.
2. The Employer/Employee relationship existed between the Plaintiff and Defendant-Employer at the time of the original injury which was November 5, 1985.
3. At such time the Plaintiff's average weekly wage was $316.00, yielding a compensation rate of $210.66.
4. The medical records of Larry D. Young, Ph.D., Gary Poehling, M.D. and Richard L. Rauck, M.D. are collectively marked as Stipulated Exhibit #1, and are received into evidence.
* * * * * * * * * * *
The Full Commission adopts the Findings of Fact found by the Deputy Commissioner, as follows:
FINDINGS OF FACT
1. This matter was last decided in a Opinion and Award by Deputy Commissioner Charles Markham on September 10, 1992.
2. Thereafter within the prescribed statutory period, the Plaintiff filed a claim based upon another change of condition under N.C.G.S. § 97-47.
3. At the time of the last hearing the Plaintiff was gainfully employed, and she and her husband were running operating a restaurant. The Plaintiff as part of her duties in that restaurant was a waitress and cook primarily, but also operated as a cashier from time to time, and also washed dishes.
4. At the time of the former decision of the Industrial Commission there was no claim made for additional payment of weekly benefits and there was no claim made for additional payment of weekly benefits and there was a finding that the Plaintiff was entitled to an additional thirty (30) weeks or an additional 15% permanent impairment rating to her left leg.
5. Sometime in November or December, 1992, Plaintiff quit working in the restaurant. Her husband sold the restaurant in August, 1993. Since Plaintiff quit working at the restaurant, she has not looked for employment in any kind of occupation whatsoever and has not placed applications for employment with any employer.
6. Plaintiff testified that she quit work at the restaurant because the condition of her leg had worsened. She testified to additional numbness and weakness, swelling of the foot and pain all the way up her leg. She testified that she couldn't stand for more than 10 or 15 minutes or to walk more than 10 to 15 minutes without her foot swelling and her leg becoming weak.
The symptoms which Plaintiff testified to are the same that she testified to the last time this case was heard, August 13, 1990.
7. When examined by Dr. Gary Poehling at the Pain Control Center at Bowman Gray School of Medicine on May 24, 1990, Plaintiff had pain in the foot and up the leg above the knee. She had numbness in the leg. Physical examination showed decreased perineal sensory nerve distribution with paresthesias into the foot. When seen in November, 1993 by Dr. John Hamjian, a neurologist at North Carolina Baptist Hospital, her neurological evaluation was normal. By November, 1993, and subsequent evaluations, there were no clinical examinations with any abnormal physical findings relative to reflex sympathetic dystrophy. On June 19, 1990, Plaintiff was noted to have decreased blood flow to the left lower extremity. That finding was not similarly documented by clinical examination in November 1993 or thereafter.
8. On April 9, 1991, Plaintiff complained of pain "like a hot knife" along the lateral aspect of the left foot with radiation into the lateral calf, thigh, and left hip. This complaint is remarkably similar to Plaintiff's complaints at the hearing in this case June 10, 1994.
On September 24, 1991, she described the pain "as a sensation of burning or hot daggers being placed on the bone."
9. When Plaintiff was earlier rated by Dr. Gary Poehling on June 6, 1991, she had "constant pain" and was unable to walk on her leg for a long period of time. The pain went from the foot to the hip. "Her entire leg is involved . . ."
10. On March 3, 1992, Plaintiff advised Dr. Hardin at the Pain Control Center, "The only time I don't hurt is when I'm at work running my legs off." On May 28, 1992 (before Plaintiff quit work and before the earlier Opinion and Award) Plaintiff described her pain as a "Ten on a ten-point scale."
11. When seen by Dr. Poehling November 27, 1992 (which would be approximate time Plaintiff says she quit work) her physical exam was unchanged except for a mild ankle sprain. Specifically, there was no notation of sensory weakness, and testing was negative for any instability in the ankle.
12. On November 26, 1993 when seen by Dr. Hamjian, Plaintiff had normal muscular and neurological function of the left lower extremity. His clinical examination and testing showed no evidence for reflex sympathetic dystrophy.
13. When seen by Dr. Poehling March 31, 1994, Plaintiff's reflex sympathetic dystrophy was "under great control". There were no clinical subjective or objective findings for reflex sympathetic dystrophy except Plaintiff's complaints. Plaintiff's condition March 31, 1994 was no different (as suggested by Dr. Poehling) than when she was earlier rated by Dr. Poehling June 6, 1991.
14. Reflex sympathetic dystrophy is a condition that characteristically will have periods of exacerbation and abatement. Plaintiff's history is consistent with such a course.
15. Since the earlier rating, Plaintiff has continued to be treated at the Pain Control Center at Bowman Gray School of Medicine. Her attending doctor has been Richard L. Rauck, a specialist is anesthesiology and pain management. He has been assisted by Dr. Gary Poehling, an orthopaedic specialist, and by Gary Young, Ph.D., a clinical psychologist.
16. Dr. Rauck believes that the Plaintiff has had periods of exacerbation and abatement but that overall, her condition has not changed since she was earlier rated.
17. Dr. Poehling believes that from a psychological and emotional standpoint, Plaintiff is in some ways better and in some ways worse. Overall, he is unable to state whether there has been a significant change in Plaintiff's condition.
18. All three doctors, Dr. Young, Dr. Poehling, and Dr. Rauck are unanimous in the opinion that Plaintiff is not totally disabled, and is capable of employment in a sedentary to light-duty job.
19. All three doctors, Dr. Young, Dr. Poehling, and Dr. Rauck are unanimous in the opinion that Plaintiff should attempt to be as active as possible consistent with the recommendation that she pace herself, and that employment would be beneficial treatment for her reflex sympathetic dystrophy.
20. Plaintiff's reflex sympathetic dystrophy has been characterized by periods of exacerbation and abatement since 1988. Her overall medical condition has not significantly changed since being rated in 1991 or since the Opinion and Award filed September, 1992 and the payment of compensation for forty-five percent (45%) permanent partial disability of the leg.
* * * * * * * * * * *
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSION OF LAW
Plaintiff has not undergone a substantial change of condition for the worse within the meaning of N.C.G.S. § 97-47.
* * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law the Full Commission affirms the holding of Deputy Commissioner Bost and enters the following:
AWARD
1. Plaintiff's claim for additional for total disability based upon a substantial change of condition is hereby DENIED.
2. Each side shall pay its own costs.
 S/ __________________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ___________________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ___________________________ DIANNE C. SELLERS COMMISSIONER